**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Walgreen Co., et al.,<br>Plaintiffs,<br>v.<br>AstraZeneca Pharmaceuticals L.P., et al.,<br>Defendants. | Civil Case Number:<br>1:06-cv-02084-RWR |
| Rite Aid Corporation and Rite Aid Hdqtrs. Corp.,<br>Plaintiffs,<br>v.<br>AstraZeneca Pharmaceuticals L.P., et al.,<br>Defendants. | Civil Case Number:<br>01:06-cv-02089-RWR |
| Louisiana Wholesale Drug Co., Inc., on behalf of itself and all others similarly situated,<br>Plaintiffs,<br>v.<br>AstraZeneca Pharmaceuticals L.P., et al.,<br>Defendants. | Civil Case Number:<br>01:06-cv-02157-RWR |
| Burlington Drug Company, Inc., Dik Drug Co., and King Drug Co. of Florence, Inc., on behalf Of themselves and all others similarly situated,<br>Plaintiffs,<br>v.<br>AstraZeneca Pharmaceuticals L.P., et al.,<br>Defendants. | Civil Case Number:<br>01:07-cv-00041-RWR |
| Meijer, Inc., and Meijer Distribution, Inc., on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br>v.<br>AstraZeneca Pharmaceuticals L.P., et al.,<br>Defendants. | Civil Case Number:<br>01:06-cv-02155-RWR |

**PLAINTIFFS' SUBMISSION OF SUPPLEMENTAL AUTHORITY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

In further opposition to Defendants' motion to dismiss, Plaintiffs bring a recent judicial decision to the Court's attention.

In *Xerox Corp. v. Media Sciences International, Inc.*, ___ F. Supp. 2d ___, 2007 WL 2685063 (S.D.N.Y. Sept. 14, 2007) (Holwell, J.) (copy attached), the United States District Court for the Southern District of New York denied a motion to dismiss a claim for monopolization based upon allegations that Xerox redesigned its printers and corresponding replacement solid ink sticks to monopolize the market for the ink sticks. Specifically, the antitrust counterclaimant alleged that (a) Xerox redesigned its printer in order to make it incompatible with the counterclaimant's ink sticks; and (b) the redesigned printer was not an improvement over the prior printer, and provided no benefits to consumers that were not already provided by Xerox's prior printer. The Court found that such allegations stated a monopolization claim under the Rule of Reason test employed in *United States v. Microsoft*, 253 F.3d 34, 65-67 (D.C. Cir. 2001), and determined that consideration of any contention by Xerox of improvement or valid business justifications would require a "factual inquiry" that "is not appropriate for resolution" on a motion to dismiss. 2007 WL 2685063 at *10-11.

The *Xerox* decision is relevant because the Plaintiffs here have similarly alleged that Defendants redesigned their initial product, Prilosec, so that it would not be compatible with or substitutable for their redesigned product, Nexium, and that Nexium is not an improvement over Prilosec. Plaintiffs made these arguments in Section I of Plaintiffs' Statement Of Points Of Authority In Opposition To Defendants' Motion To Dismiss.

Respectfully submitted,

Dated: October 18, 2007
Miami, FL

By: s/ Robert D.W. Landon, III

Robert D.W. Landon, III, Esq.
Scott Eliot Perwin, Esq.
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard
1100 Miami Center
Miami, FL 33131
Telephone: 305-373-1000
Facsimile: 305-372-1861

Lauren C. Ravkind, Esq.
KENNY NACHWALTER, P.A.
111 Congress Avenue, Suite 1060
Austin, TX 78701

Joseph T. Lukens, Esq.
HANGLEY ARONCHICK SEGAL & PUDLIN
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6933

Steve D. Shadowen, Esq.
Monica L. Rebuck, Esq.
HANGLEY ARONCHICK SEGAL & PUDLIN
30 North Third Street, Suite 700
Harrisburg, PA 17101-1713

David U. Fierst, Esq.
STEIN, MITCHELL & MEZINES LLP
1100 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 20036

Bruce E. Gerstein, Esq.
Barry S. Taus, Esq.
Brett Cebulash, Esq.
Kevin S. Landau, Esq.
GARWIN GERSTEIN & FISHER LLP
1501 Broadway, Suite 1416
New York, NY 10036

Daniel Berger, Esq.
David F. Sorensen, Esq.
Eric Cramer, Esq.
BERGER & MONTAGUE
1622 Locust Street
Philadelphia, PA 19103

John G. Odom, Esq.
Stuart E. Des Roches, Esq.
Charles F. Zimmer II, Esq.
ODOM & DES ROCHES, LLP
Suite 2020, Poydras Center
650 Poydras Street
New Orleans, LA 70130

David P. Smith, Esq.
W. Ross Foote, Esq.
PERCY, SMITH & FOOTE L.L.P.
720 Murray Street
P.O. Box 1632
Alexandria, LA 71309

Brent B. Barriere, Esq.
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA 70130

Adam Moskowitz, Esq.
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon Blvd., 9th Floor
Miami, Fl 33131-2335

Linda Nussbaum, Esq.
Robert N. Kaplan, Esq.
KAPLAN FOX & KILSHEIMER, LLP
805 Third Avenue, 22nd Floor
New York, NY 10022

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2007, I have served a true and correct copy of the foregoing on below-listed counsel of record in this proceeding, by electronic means, as well as by United States mail, properly addressed and first class postage prepaid.

s/ Robert D.W. Landon, III
Robert D.W. Landon, III

**Counsel of Record:**

Mark Haddad
SIDLEY AUSTIN LLP
555 West Fifth Street
Los Angeles, CA 90013

John Treece
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603

***Attorneys for Defendants***

David U. Fierst (D.C. Bar 912899)
STEIN, MITCHELL & MEZINES LLP
1100 Connecticut Avenue, N.W., Suite 1100
Washington, DC 20036

Bruce E. Gerstein, Esq.
Barry S. Taus, Esq.
Brett Cebulash, Esq.
Kevin S. Landau, Esq.
GARWIN GERSTEIN & FISHER LLP
1501 Broadway , Suite 1416
New York, NY 10036

Daniel Berger, Esq.
David F. Sorensen, Esq.
Eric Cramer, Esq.
BERGER & MONTAGUE
1622 Locust Street
Philadelphia, PA 19103

John G. Odom, Esq.
Stuart E. Des Roches, Esq.
Charles F. Zimmer II, Esq.
ODOM & DES ROCHES, LLP
Suite 2020, Poydras Center
650 Poydras Street
New Orleans, LA 70130

David P. Smith, Esq.
W. Ross Foote, Esq.
PERCY, SMITH & FOOTE L.L.P.
720 Murray Street
P.O. Box 1632
Alexandria, LA 71309

Brent B. Barriere, Esq.
PHELPS DUNBAR LLP
Canal Place
365 Canal Street , Suite 2000
New Orleans, LA 70130

Adam Moskowitz, Esq.
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon Blvd., 9th Floor
Miami, Fl 33131-2335

C
Xerox Corp. v. Media Sciences Intern., Inc.
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
XEROX CORPORATION, Plaintiff,
v.
MEDIA SCIENCES INTERNATIONAL, INC. and Media Sciences, Inc., Defendants.
**No. 06 Civ. 4872(RJH).**

Sept. 14, 2007.

**Background:** Patentee filed action alleging competitor's manufacture, use, and sale of solid ink sticks for use in patentee's phase change color printers infringed its patents. Competitor filed counterclaim, alleging an antitrust violation under the Sherman Act. Patentee filed a motion to dismiss counterclaim, and competitor filed motion for leave to file an amended answer.

**Holdings:** The District Court, Richard J. Holwell, J., held that:

(1) competitor would be granted leave to amend its answer;

(2) competitor adequately alleged a threatened antitrust injury entitling it to seek injunctive relief under the Clayton Act;

(3) competitor's conclusory statement that patentee disseminated false and disparaging statements and that this conduct affected competition was insufficient to adequately plead an antitrust injury;

(4) competitor adequately alleged an antitrust injury entitling it to seek monetary damages;

(5) competitor was a proper party to bring antitrust action;

(6) competitor defined a product market that was both plausible and bore a rational relationship to the rule of reasonable interchangeability;

(7) competitor adequately alleged that patentee possessed monopoly power in the relevant market, for purposes of the Sherman Act;

(8) competitor adequately alleged that patentee employed anticompetitive conduct to achieve or maintain monopoly power when it redesigned its printers and patented the corresponding replacement solid ink sticks; and

(9) competitor adequately alleged that patentee's loyalty rebates employed anticompetitive conduct to achieve or maintain monopoly power.

Motion to dismiss denied; motion to file amended answer granted.

**[1] Federal Civil Procedure 170A ⚷824**

170A Federal Civil Procedure
170AVII Pleadings and Motions
170AVII(E) Amendments
170Ak824 k. Time for Amendment in General. Most Cited Cases

**Federal Civil Procedure 170A ⚷834**

170A Federal Civil Procedure
170AVII Pleadings and Motions
170AVII(E) Amendments
170Ak834 k. Injustice or Prejudice. Most Cited Cases

**Federal Civil Procedure 170A ⚷851**

170A Federal Civil Procedure
170AVII Pleadings and Motions
170AVII(E) Amendments

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

170Ak851 k. Form and Sufficiency of Amendment. Most Cited Cases

A court should deny a motion to amend a pleading only for good reasons, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment. Fed.Rules Civ.Proc.Rule 15(a), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ⚿851**

170A Federal Civil Procedure
170AVII Pleadings and Motions
170AVII(E) Amendments
170Ak851 k. Form and Sufficiency of Amendment. Most Cited Cases

An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss for failure to state a claim upon which relief can be granted. Fed.Rules Civ.Proc.Rules 12(b)(6), 15(a), 28 U.S.C.A.

**[3] Antitrust and Trade Regulation 29T⚿972(1)**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk972 Pleading
29Tk972(1) k. In General. Most Cited Cases

Competitor would be granted leave to amend its counterclaim, alleging antitrust violations under the Sherman Act, even though motion to amend was made nine months after patentee's infringement case was filed, where competitor's motion to amend, which was prompted by patentee's motion to dismiss, was filed prior to the established deadline for amendments of pleadings, and granting leave would cause no undue prejudice to patentee. Sherman Act, § 2, 15 U.S.C.A. § 2.

**[4] Federal Civil Procedure 170A ⚿642**

170A Federal Civil Procedure
170AVII Pleadings and Motions
170AVII(A) Pleadings in General
170Ak642 k. Conclusions in General. Most Cited Cases

**Federal Civil Procedure 170A ⚿673**

170A Federal Civil Procedure
170AVII Pleadings and Motions
170AVII(B) Complaint
170AVII(B)1 In General
170Ak673 k. Claim for Relief in General. Most Cited Cases

A complaint does not need detailed factual allegations, yet it requires more than labels and conclusions, and a formalistic recitation of the elements of a cause of action will not do; rather, the factual allegations must be enough to raise a right to relief above the speculative level.

**[5] Federal Civil Procedure 170A ⚿1832**

170A Federal Civil Procedure
170AXI Dismissal
170AXI(B) Involuntary Dismissal
170AXI(B)5 Proceedings
170Ak1827 Determination
170Ak1832 k. Matters Considered in General. Most Cited Cases

On a motion to dismiss for failure to state a claim upon which relief can be granted, a court is generally limited to the factual allegations in the complaint, documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiff's possession or of which plaintiff had knowledge and relied in bringing suit. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[6] Antitrust and Trade Regulation 29T ⚿960**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk959 Right of Action; Persons Entitled to Sue; Standing; Parties
29Tk960 k. In General. Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Antitrust and Trade Regulation 29T ⚷963(1)**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk959 Right of Action; Persons Entitled to Sue; Standing; Parties
29Tk963 Injury to Business or Property
29Tk963(1) k. In General. Most Cited Cases

Private plaintiffs seeking to enforce monopoly provision of the Sherman Act must satisfy the standing requirement of the Clayton Act, which requires a plaintiff to prove antitrust injury, and to prove it is a proper party to bring a private antitrust action. Sherman Act, § 2, 15 U.S.C.A. § 2; Clayton Act, §§ 4, 16, 15 U.S.C.A. §§ 15, 26.

**[7] Antitrust and Trade Regulation 29T⚷963(1)**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk959 Right of Action; Persons Entitled to Sue; Standing; Parties
29Tk963 Injury to Business or Property
29Tk963(1) k. In General. Most Cited Cases

**Antitrust and Trade Regulation 29T ⚷963(2)**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk959 Right of Action; Persons Entitled to Sue; Standing; Parties
29Tk963 Injury to Business or Property
29Tk963(2) k. Causation. Most Cited Cases

Factors to consider in determining whether a plaintiff is a "proper party" to bring an antitrust action include: (1) the causal connection between the alleged antitrust violation and the harm to the plaintiff; (2) the existence of an improper motive; (3) whether the injury was of a type that Congress sought to redress with the antitrust laws; (4) the directness of the connection between the injury and alleged restraint in the relevant market; (5) the speculative nature of the damages; and (6) the risk of duplicative recoveries or complex apportionment of damages.

**[8] Antitrust and Trade Regulation 29T⚷963(1)**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk959 Right of Action; Persons Entitled to Sue; Standing; Parties
29Tk963 Injury to Business or Property
29Tk963(1) k. In General. Most Cited Cases

"Antitrust injury," for purposes of the standing requirement of the Clayton Act, is injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. Clayton Act, §§ 4, 16, 15 U.S.C.A. §§ 15, 26.

**[9] Antitrust and Trade Regulation 29T⚷963(1)**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk959 Right of Action; Persons Entitled to Sue; Standing; Parties
29Tk963 Injury to Business or Property
29Tk963(1) k. In General. Most Cited Cases

The antitrust injury requirement for standing under the Clayton Act ensures that a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior; thus, allegations of an injury to a competitor are insufficient unless accompanied by allegations of injury to competition as well. Clayton Act, §§ 4, 16, 15 U.S.C.A. §§ 15, 26.

**[10] Antitrust and Trade Regulation 29T⚷972(3)**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk972 Pleading
29Tk972(2) Complaint
29Tk972(3) k. In General. Most Cited Cases
Under the provision of the Clayton Act governing monetary relief, a plaintiff does not necessarily need to allege and prove an actual lessening of competition to recover, so long as competition is likely to decrease, although the case for relief will be strongest where competition has been diminished. Clayton Act, § 4, 15 U.S.C.A. § 15.

**[11] Antitrust and Trade Regulation 29T 972(5)**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk972 Pleading
29Tk972(2) Complaint
29Tk972(5) k. Injury to Business or Property. Most Cited Cases
Under provision of the Clayton Act governing injunctive relief, a private plaintiff has standing to seek such relief where it adequately alleges threatened loss or damage of the type the antitrust laws were designed to prevent. Clayton Act, § 16, 15 U.S.C.A. § 26.

**[12] Antitrust and Trade Regulation 29T 972(5)**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk972 Pleading
29Tk972(2) Complaint
29Tk972(5) k. Injury to Business or Property. Most Cited Cases
Competitor adequately alleged a threatened antitrust injury entitling it to seek injunctive relief under the Clayton Act for patentee's alleged exclusionary conduct of redesigning its phase change color printers and patented the replacement solid ink sticks to preclude all competition from the market for replacement solid ink sticks. Clayton Act, § 16, 15 U.S.C.A. § 26.

**[13] Antitrust and Trade Regulation 29T 972(5)**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk972 Pleading
29Tk972(2) Complaint
29Tk972(5) k. Injury to Business or Property. Most Cited Cases
Competitor's conclusory statement that patentee disseminated false and disparaging statements and that this conduct affected competition was insufficient to adequately plead an antitrust injury, as was required for competitor to have standing, under Clayton Act, to seek monetary or injunctive relief for patentee's alleged anticompetitive conduct; competitor made no attempt to explain how letters and fliers suggesting that competitor's solid ink sticks damaged patentee's phase change color printers, even if false, threatened to or was driving competitor out of business, such that it affected competition generally and did not just cause competitor economic injury. Clayton Act, §§ 4, 16, 15 U.S.C.A. §§ 15, 26.

**[14] Antitrust and Trade Regulation 29T 972(5)**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk972 Pleading
29Tk972(2) Complaint
29Tk972(5) k. Injury to Business or Property. Most Cited Cases
Mere allegations of business disparagement are not the type of injuries to competition that the antitrust laws were designed to prevent; they are essentially allegations of injury to a competitor, and thus insufficient to constitute an antitrust injury without allegations of injury to competition in general.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**[15] Antitrust and Trade Regulation 29T 972(5)**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk972 Pleading
29Tk972(2) Complaint
29Tk972(5) k. Injury to Business or Property. Most Cited Cases
Competitor adequately alleged an antitrust injury entitling it to seek monetary damages under the Clayton Act for patentee's alleged use of loyalty rebates to exclude competitor from the solid ink stick market. Clayton Act, § 4, 15 U.S.C.A. § 15.

**[16] Antitrust and Trade Regulation 29T 960**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk959 Right of Action; Persons Entitled to Sue; Standing; Parties
29Tk960 k. In General. Most Cited Cases

**Antitrust and Trade Regulation 29T 963(1)**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk959 Right of Action; Persons Entitled to Sue; Standing; Parties
29Tk963 Injury to Business or Property
29Tk963(1) k. In General. Most Cited Cases
A showing of antitrust injury is necessary, but not always sufficient to establish standing, under the Clayton Act; other reasons may sometimes indicate that a party who states an antitrust injury is nevertheless not a proper antitrust plaintiff. Clayton Act, §§ 4, 16, 15 U.S.C.A. §§ 15, 26.

**[17] Antitrust and Trade Regulation 29T 964**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk959 Right of Action; Persons Entitled to Sue; Standing; Parties
29Tk964 k. Competitors. Most Cited Cases
Competitor was a proper party to bring antitrust action against patentee for allegedly seeking to enforce its patents and exclude competitor from the solid ink stick market; threat of injury to competitor was hardly speculative or indirect, and competitor's interests of appeared to be aligned with those of consumers generally.

**[18] Antitrust and Trade Regulation 29T 972(3)**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk972 Pleading
29Tk972(2) Complaint
29Tk972(3) k. In General. Most Cited Cases
To survive a motion to dismiss, a claim for unreasonable restraint or monopolization under the Sherman Act must allege a relevant geographic and product market in which trade was unreasonably restrained or monopolized; without a definition of that market there is no way to measure a defendant's ability to lessen or destroy competition. Sherman Act, §§ 1, 2, 15 U.S.C.A. §§ 1, 2.

**[19] Antitrust and Trade Regulation 29T 972(3)**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk972 Pleading
29Tk972(2) Complaint
29Tk972(3) k. In General. Most Cited Cases
Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss unreasonable restraint or monopolization claims

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

under the Sherman Act for failure to plead a relevant product market; there is, however, no absolute rule against dismissal for failure to allege a relevant product market. Sherman Act, §§ 1, 2, 15 U.S.C.A. §§ 1, 2.

**[20] Antitrust and Trade Regulation 29T ⚷554**

29T Antitrust and Trade Regulation
29TVI Antitrust Regulation in General
29TVI(C) Market Power; Market Share
29Tk554 k. Elasticity of Supply and Demand. Most Cited Cases

**Antitrust and Trade Regulation 29T ⚷557**

29T Antitrust and Trade Regulation
29TVI Antitrust Regulation in General
29TVI(C) Market Power; Market Share
29Tk555 Relevant Market
29Tk557 k. Product Market. Most Cited Cases
In an action for unreasonable restraint or monopolization under the Sherman Act, a relevant product market consists of products that have reasonable interchangeability for the purposes for which they are produced, price, use and qualities considered. Sherman Act, §§ 1, 2, 15 U.S.C.A. §§ 1 , 2.

**[21] Antitrust and Trade Regulation 29T ⚷554**

29T Antitrust and Trade Regulation
29TVI Antitrust Regulation in General
29TVI(C) Market Power; Market Share
29Tk554 k. Elasticity of Supply and Demand. Most Cited Cases
Products will be considered to be reasonably interchangeable, for purposes of unreasonable restraint or monopolization claims under the Sherman Act, if consumers treat them as acceptable substitutes. Sherman Act, §§ 1, 2, 15 U.S.C.A. §§ 1, 2.

**[22] Antitrust and Trade Regulation 29T⚷ 972(3)**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk972 Pleading
29Tk972(2) Complaint
29Tk972(3) k. In General. Most Cited Cases
To survive a motion to dismiss, in an action alleging unreasonable restraint or monopolization under the Sherman Act, the alleged product market must bear a rational relation to the methodology courts prescribe to define a market for antitrust purposes, analysis of the interchangeability of use or the cross-elasticity of demand, and it must be plausible. Sherman Act, §§ 1, 2, 15 U.S.C.A. §§ 1, 2.

**[23] Antitrust and Trade Regulation 29T⚷ 972(3)**

29T Antitrust and Trade Regulation
29TXVII Antitrust Actions, Proceedings, and Enforcement
29TXVII(B) Actions
29Tk972 Pleading
29Tk972(2) Complaint
29Tk972(3) k. In General. Most Cited Cases
In an action alleging unreasonable restraint or monopolization under the Sherman Act, dismissal on the pleadings may be appropriate where the pleader fails in its attempt to limit a product market to a single brand or where the pleader fails to offer any plausible explanation as to why a market should be limited in a particular way. Sherman Act, §§ 1, 2 , 15 U.S.C.A. §§ 1, 2.

**[24] Antitrust and Trade Regulation 29T ⚷596**

29T Antitrust and Trade Regulation
29TVI Antitrust Regulation in General
29TVI(E) Particular Industries or Businesses
29Tk596 k. Office Equipment. Most Cited Cases
Even assuming that market for replacement solid ink sticks could properly be characterized as a single-brand product market, competitor reasonably alleged that relevant market from the perspective of owners of patentee's phase change color printers was composed of only consumables that were compatible with their printers, namely replacement

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

solid ink sticks and, thus, defined a product market that was both plausible and bore a rational relationship to the rule of reasonable interchangeability, as was required to allege unreasonable restraint and monopolization under the Sherman Act. Sherman Act, §§ 1, 2, 15 U.S.C.A. §§ 1, 2.

**[25] Antitrust and Trade Regulation 29T ⚷620**

29T Antitrust and Trade Regulation
29TVII Monopolization
29TVII(A) In General
29Tk619 Elements in General
29Tk620 k. In General. Most Cited Cases

**Antitrust and Trade Regulation 29T ⚷621**

29T Antitrust and Trade Regulation
29TVII Monopolization
29TVII(A) In General
29Tk619 Elements in General
29Tk621 k. Intent. Most Cited Cases
The elements of a monopolization claim under the Sherman Act are: (1) the possession of monopoly power in the relevant market, and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. Sherman Act, § 2, 15 U.S.C.A. § 2.

**[26] Antitrust and Trade Regulation 29T ⚷641**

29T Antitrust and Trade Regulation
29TVII Monopolization
29TVII(C) Market Power; Market Share
29Tk641 k. In General. Most Cited Cases
"Monopoly power," also referred to as market power is the power to control prices or exclude competition; it may be proven directly by evidence of the control of prices or the exclusion of competition, or it may be inferred from one firm's large percentage share of the relevant market.

**[27] Antitrust and Trade Regulation 29T ⚷691**

29T Antitrust and Trade Regulation
29TVII Monopolization
29TVII(E) Particular Industries or Businesses
29Tk691 k. Office Equipment. Most Cited Cases
Competitor adequately alleged that patentee possessed monopoly power in the relevant market, for purposes of the Sherman Act when it alleged that patentee's share in the market for replacement solid ink sticks exceeded 90%, notwithstanding possibility that modest cost of color printers and availability of information as to lifecycle costs could result in increases in the price of replacement solid ink sticks that would reduce sales of patentee's phase change color printers to such an extent that patentee was economically unable to exert monopoly power. Sherman Act, § 2, 15 U.S.C.A. § 2
.

**[28] Antitrust and Trade Regulation 29T ⚷641**

29T Antitrust and Trade Regulation
29TVII Monopolization
29TVII(C) Market Power; Market Share
29Tk641 k. In General. Most Cited Cases
The mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system.

**[29] Antitrust and Trade Regulation 29T ⚷641**

29T Antitrust and Trade Regulation
29TVII Monopolization
29TVII(C) Market Power; Market Share
29Tk641 k. In General. Most Cited Cases
Possession of monopoly power will only be found to be unlawful where it is acquired or maintained through anticompetitive conduct.

**[30] Antitrust and Trade Regulation 29T ⚷641**

29T Antitrust and Trade Regulation
29TVII Monopolization
29TVII(C) Market Power; Market Share
29Tk641 k. In General. Most Cited Cases
The development of superior products is an essential element of lawful competition, and any firm, even a monopolist, may generally bring its products to market whenever and however it

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

chooses.

**[31] Antitrust and Trade Regulation 29T ⚿682**

29T Antitrust and Trade Regulation
29TVII Monopolization
29TVII(E) Particular Industries or Businesses
29Tk679 Intellectual Property
29Tk682 k. Patents. Most Cited Cases
A patent holder is permitted to maintain his patent monopoly through conduct permissible under the patent laws.

**[32] Antitrust and Trade Regulation 29T ⚿682**

29T Antitrust and Trade Regulation
29TVII Monopolization
29TVII(E) Particular Industries or Businesses
29Tk679 Intellectual Property
29Tk682 k. Patents. Most Cited Cases
Competitor adequately alleged that patentee employed anticompetitive conduct to achieve or maintain monopoly power, in violation of the Sherman Act, when it redesigned its printers and patented the corresponding replacement solid ink sticks so as to preclude all competition in the market for replacement solid ink sticks and without serving any benefit to consumers. Sherman Act, § 2, 15 U.S.C.A. § 2.

**[33] Antitrust and Trade Regulation 29T ⚿682**

29T Antitrust and Trade Regulation
29TVII Monopolization
29TVII(E) Particular Industries or Businesses
29Tk679 Intellectual Property
29Tk682 k. Patents. Most Cited Cases
Competitor's allegation that patentee offered loyalty rebates to its resellers, distributors, and wholesalers who agreed not to sell competitor's replacement solid ink sticks with the purpose and effect of reducing supply of lower price competing products in the market adequately alleged that patentee's loyalty rebates foreclosed a substantial share of the market, preventing competitor from reaching the market with its replacement solid ink sticks, thereby employing anticompetitive conduct to achieve or maintain monopoly power, in violation of the Sherman Act. Sherman Act, § 2, 15 U.S.C.A. § 2.

**[34] Antitrust and Trade Regulation 29T ⚿659**

29T Antitrust and Trade Regulation
29TVII Monopolization
29TVII(D) Illegal Restraints or Other Misconduct
29Tk657 Refusals to Deal
29Tk659 k. Exclusive Dealing Arrangements/Agreements/Distributorships. Most Cited Cases
Exclusive dealing can have adverse economic consequences by allowing one supplier of goods or services unreasonably to deprive other suppliers of a market for their goods; however, exclusive dealing is not uniformly anticompetitive.

**[35] Antitrust and Trade Regulation 29T ⚿659**

29T Antitrust and Trade Regulation
29TVII Monopolization
29TVII(D) Illegal Restraints or Other Misconduct
29Tk657 Refusals to Deal
29Tk659 k. Exclusive Dealing Arrangements/Agreements/Distributorships. Most Cited Cases
To state a claim for exclusive dealing, under the Sherman Act, a plaintiff must allege as a threshold matter a substantial foreclosure of competition in the relevant market. Sherman Act, § 2, 15 U.S.C.A. § 2.

**[36] Antitrust and Trade Regulation 29T ⚿713**

29T Antitrust and Trade Regulation
29TVIII Attempts to Monopolize
29TVIII(A) In General
29Tk712 Elements in General
29Tk713 k. In General. Most Cited Cases

**Antitrust and Trade Regulation 29T ⚿714**

29T Antitrust and Trade Regulation
29TVIII Attempts to Monopolize
29TVIII(A) In General
29Tk712 Elements in General
29Tk714 k. Chance of Success in the Relevant Market. Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Antitrust and Trade Regulation 29T ⚷715**

29T Antitrust and Trade Regulation
29TVIII Attempts to Monopolize
29TVIII(A) In General
29Tk712 Elements in General
29Tk715 k. Intent. Most Cited Cases

To recover for attempted monopolization, under the Sherman Act, plaintiff must establish: (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power. Sherman Act, § 2, 15 U.S.C.A. § 2.

**[37] Antitrust and Trade Regulation 29T ⚷741**

29T Antitrust and Trade Regulation
29TVIII Attempts to Monopolize
29TVIII(B) Particular Industries or Businesses
29Tk741 k. Office Equipment. Most Cited Cases

Competitor's allegations, that patentee engaged in anticompetitive conduct of offered loyalty rebates to its resellers, distributors, and wholesalers who agreed not to sell competitor's replacement solid ink sticks with the specific intent to monopolize the relevant market and that there was a dangerous probability that patentee would succeed in its attempts to monopolize the relevant market, were sufficient to state a claim for attempted monopolization. Sherman Act, § 2, 15 U.S.C.A. § 2.

James Gerard McCarney, Howrey LLP, New York, NY, Jennifer L. Dzwonczyk, Jim W. Ko, Joseph P. Lavelle, Howrey Simon Arnold & White LLP, Washington, DC, for Plaintiff.
Anthony P. La Rocco, Kirkpatrick & Lockhart Preston Gates Ellis, LLP, Newark, NJ, Hunter D. Keeton, James J. Foster, Lawrence M. Green, Wolf, Greenfield & Sacks, P.C., Boston, MA, William N. Hebert, William H. Hebert, Kirkpatrick & Lockhart Preston Gates Ellis LLP, San Francisco, CA, for Defendants.

RICHARD J. HOLWELL, United States District Judge.

***1** Defendants Media Sciences International, Inc. and Media Sciences, Inc. (collectively, "MS") bring antitrust counterclaims against plaintiff Xerox Corporation ("Xerox") under Section 2 of the Sherman Act, 15 U.S.C. § 2 (2006). MS alleges that Xerox monopolized or attempted to monopolize the market for replacement solid ink sticks for use in Xerox phase change color printers. Xerox moves to dismiss the antitrust counterclaims pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, Xerox's motion is DENIED.

On June 23, 2006, Xerox filed a complaint against MS alleging that its manufacture, use, and sale of solid ink sticks for use in Xerox phase change color printers infringe multiple Xerox patents. On January 16, 2007, MS filed its Second Amended Answer, which contained (for the first time) a Fifth Counterclaim alleging an antitrust violation under Section 2 of the Sherman Act. On January 30, 2007, Xerox filed a motion to dismiss the Fifth Counterclaim, arguing, inter alia, that the allegations contained therein were conclusory. In its memorandum of law opposing Xerox's motion, MS sought leave to again amend its answer, attaching a proposed Third Amended Answer that it suggested more fully alleged antitrust violations. Xerox then filed a memorandum of law responding to MS's opposition, and opposing the motion to amend on the grounds that the amended counterclaims were subject to dismissal under Rule 12(b)(6) and thus amendment would be futile. Finally, MS filed a memorandum of law responding to these arguments.

The antitrust allegations, as set forth in the Fifth and Sixth Counterclaims of the proposed Third Amended Answer, are as follows: Xerox is the only seller of phase change color printers (also known as solid ink printers) in the United States. (Third Amended Answer ("TAA") ¶ 61.) It is also the primary supplier of replacement solid ink sticks for such printers, with a market share of over 90%. (TAA ¶¶ 62, 66.) MS is the only other significant supplier of replacement color ink sticks, in direct

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

competition with Xerox, and has been experiencing increasing ink stick sales. (TAA ¶¶ 54, 67 .) These color ink sticks and Xerox phase change color printers are only compatible with one another; thus, consumables from other types of printers cannot be used with phase change color printers and replacement color ink sticks can not be used in any other type of printer, such as a laserjet or inkjet. (TAA ¶ 62.) The price of MS's replacement solid ink sticks is affected only by price changes in the price of Xerox's solid ink sticks. It is not affected by price changes in the price of consumables for other types of printers, phase change color printers, or any other type of printers. (TAA ¶ 63, 64.)

MS further alleges that in order to acquire and maintain its monopoly power in the market for replacement solid ink sticks, Xerox engaged in the following anticompetitive behavior. First, it altered the feed channels in its new phase change color printer to prevent MS from selling its (non-infringing) replacement solid ink sticks to users of this printer. (TAA ¶ 69(a).) Second, it pursued and received patent protection for the changes to the feed channels and the corresponding changes to replacement solid ink sticks, precluding MS from modifying its replacement solid ink sticks to make them compatible with the new phase change color printer. (TAA ¶ 69(b).) During prosecution of these patents and afterwards, Xerox modified all its other models of phase change color printers to utilize the new feed channels and discontinued (or intends to discontinue) those that do not, in order to have its patent cover the entire market of replacement solid ink sticks. (*Id.*) The only benefit to consumers of the feed channels and corresponding solid ink sticks-preventing the insertion of the wrong color of ink into the wrong channel-was already served by key plates in previous models of Xerox phase change color printers. (*Id.*) Third, Xerox disseminated false and disparaging statements about MS and has discouraged customers making service calls for their phase change color printers from using non-Xerox solid ink sticks. (TAA ¶ 69(c).) Finally, Xerox has offered loyalty rebates to those resellers, distributors, and wholesalers who agree not to sell MS's replacement solid ink sticks. (TAA ¶ 69(d).) As a result of this conduct, MS alleges that Xerox has monopolized and attempted to monopolize the market for replacement solid ink sticks.

***2** [1][2][3] In its opposition memorandum of law, MS moves to amend its answer. Fed.R.Civ.P. 15(a) provides: "a party may amend the party's pleading only by leave of court ... and leave shall be freely given when justice so requires."A Court should deny a motion to amend only for good reasons, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Xerox opposes the motion on the ground that the proposed amendments would be futile.[FN1]"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)."*Lucente v. IBM Corp.,* 310 F.3d 243, 258 (2d Cir.2002). Accordingly, the Court will consider whether the Fifth and Sixth Counterclaims in the proposed Third Amended Answer are subject to dismissal pursuant to Rule 12(b)(6).

[4] When considering a motion to dismiss under Rule 12(b)(6), the Court "must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff."*Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995) (citations omitted). Pursuant to Fed.R.Civ.P. Rule 8(a), the complaint must include " a short and plain statement of the claim showing that the pleader is entitled to relief."Fed.R.Civ.P. 8(a)(2); *see also Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (complaint must " give the defendant fair notice of what the ... claim is and the grounds upon which it rests."). The complaint "does not need detailed factual allegations," yet it "requires more than labels and conclusions, and a formalistic recitation of the elements of a cause of action will not do."*Bell Atlantic Corp. v. Twombly,* ---U.S. ----, ---- - ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."*Id.* at 1965;*see also Iqbal v. Hasty,* No. 05-5768, 490 F.3d 143, 2007 U.S.App. LEXIS 13911, at *35 (2d Cir. June 14, 2007) (plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.").

[5] The Court is generally limited to "the factual allegations in [the] complaint, documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied in bringing suit." *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993) .

Section 2 of the Sherman Act makes it unlawful to " monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States."15 U.S.C. § 2. MS's Fifth and Sixth Counterclaims allege that Xerox violated the Sherman Act by monopolizing or attempting to monopolize the market for replacement solid ink sticks. According to Xerox, MS's antitrust counterclaims must be dismissed because they fail, as a matter of law, to allege: (1) a valid antitrust injury; (2) a valid relevant market; and (3) prohibited anticompetitive conduct. The Court will address these contentions seriatim.

**I. Standing and Antitrust Injury**

***3** [6][7] Private plaintiffs seeking to enforce Section 2 of the Sherman Act must satisfy the standing requirement of Sections 4 and 16 of the Clayton Act.[FN2]*See Sunshine Cellular v. Vanguard Cellular Systems, Inc.,* 810 F.Supp. 486, 491 (S.D.N.Y.1992). This requires plaintiff to " prove antitrust injury," *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), and to prove it "is a proper party [FN3] to bring a private antitrust action," *Associated General Contractors v. Cal. State Council of Carpenters,* 459 U.S. 519, 535 n. 31, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Xerox argues that MS has not satisfied either requirement.

[8][9][10][11] Antitrust injury is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."*Brunswick Corp.,* 429 U.S. at 489. "The antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior."*Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 343, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990). Thus, allegations of an injury to a competitor are insufficient unless accompanied by allegations of injury to competition as well. *See Brunswick Corp.,* 429 U.S. at 488 (" antitrust laws ... were enacted for 'the protection of competition, not competitors.'" (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962))). Under Section 4 of the Clayton Act, a plaintiff "does not necessarily" need to allege and "prove an actual lessening of competition in order to recover," so long as competition is likely to decrease, although " the case for relief will be strongest where competition has been diminished."*Id.* at 489 n. 14. Under Section 16 of the Clayton Act, a private plaintiff has standing to seek injunctive relief where it adequately alleges "threatened loss or damage of the type the antitrust laws were designed to prevent." *Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 113, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986) (internal quotation marks and citations omitted).

MS alleges that as a result of Xerox's conduct, " competition in the relevant market has been suppressed," and MS "has sustained the type of injury that the antitrust laws were intended to prevent."(TAA ¶¶ 70-71.) Xerox argues these allegations are insufficient because they fail to show an actual adverse effect on competition as a whole. (Xerox's Mem. in Support of Mot. to Dismiss 16.) However, MS need not wait to make this claim until it is "actually ... driven from the market and competition is thereby lessened."*Brunswick Corp.,* 429 U.S. at 489 n. 14. More problematic is the fact

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that sales of MS's replacement solid ink sticks are alleged to be increasing, so it does not appear that MS is even being driven from the market. (TAA ¶ 54.) Indeed, it is unclear what injury is actually being alleged. Thus, it is necessary to identify the actual or threatened injury to MS, if any, in order to evaluate whether it stems from the alleged competition-reducing aspect of Xerox's conduct.

***4** [12] The first allegation of anticompetitive conduct is that Xerox redesigned its phase change color printers and patented the replacement solid ink sticks to preclude all competition from the market for replacement solid ink sticks. MS is confronted with a decision of whether to (1) produce the solid ink sticks, risking liability in the event a Court determines Xerox's patents to be valid and infringed; or (2) cease production of solid ink sticks. As both the primary claims in this lawsuit and MS's increasing ink sales indicate, MS chose the former strategy. Because MS did not halt production and sales of solid ink sticks, the most obvious actual injury it can allege based on Xerox's conduct is the cost of defending against this litigation. The cost of defending against a non-frivolous patent lawsuit is hardly the type of injury that antitrust laws were intended to prevent. However, by this lawsuit, MS is threatened with being precluded entirely from the market for solid ink sticks. (*See* TAA ¶ 69(b) (Xerox's conduct threatens to "exclud[e] lower-priced competitors, such as MS Inc., from the relevant market").) One of two producers in the market will have been driven out and no competitors will be able to enter, offering consumers fewer choices and potentially higher prices. This threatened injury (of direct exclusion from the marketplace) is exactly the type that antitrust laws were designed to prevent and flows from the competition-reducing aspect of Xerox's conduct.[FN4] *See, e.g., C.V.R. Reddy M.B.B.S. v. Puma,* No. 06-cv-1283, 2006 U.S. Dist. LEXIS 67848, at *12-*13 (E.D.N.Y. Sep. 21, 2006) (displacement of plaintiff from market leading to decline in provision of qualified services constitutes antitrust injury); *Chapdelaine Corp. Secs. & Co. v. Depository Trust & Clearing Corp.,* No. 05 Civ. 10711(SAS), 2006 U.S. Dist. LEXIS 49273, at *17-*18 (S.D.N.Y. July 13, 2006) ("foreclose[ure] from competing in the relevant market, thus decreasing the number of alternatives available to consumers of such products," constitutes antitrust injury); *see also Full Draw Prods. v. Easton Sports, Inc.,* 182 F.3d 745, 754 (10th Cir.1999) ("[W]e find it hard to imagine a closer connection between anticompetitive effect and injury than the destruction of [one of two competitors] and the loss of competition in the [relevant] market."). Therefore, the Court finds that MS has adequately alleged a threatened antitrust injury entitling it to seek injunctive relief under Section 16 of the Clayton Act for Xerox's alleged exclusionary conduct.

[13][14] The second allegation of anticompetitive conduct is that "Xerox has disseminated false and disparaging statements."(TAA ¶ 69(c) .) Elaborating on the injury to itself, MS alleges that it "has suffered monetary damages through injury to its reputation caused by Xerox's actions, and by customers lost as a result of those actions."(TAA ¶ 58.) "Mere allegations of business disparagement are not the type of injuries to competition that the antitrust laws were designed to prevent."*Re/Max Int'l v. Realty One,* 900 F.Supp. 132, 159 (D.Ohio 1995)), *aff'd on this ground,*173 F.3d 995, 1024 (6th Cir.1999). They are essentially allegations of injury to a competitor, and thus insufficient to constitute an antitrust injury without allegations of injury to competition in general. *See Arbitron Co. v. Tropicana Prod Sales, Inc.,* No. 91 Civ. 3697(PKL), 1993 U.S. Dist. LEXIS 5587, at *34 (S .D.N.Y. Apr. 28, 1993) (dismissing claim where plaintiff only alleged harm to itself, not to competition generally). In its Fifth Counterclaim, MS also alleges that the statements "had more than a *de minimis* affect on competition."(TAA ¶ 69(c).). However, MS makes no attempt to explain how letters and fliers suggesting that MS's product damages Xerox printers, even if false, threatened to or was driving MS out of business such that it affected competition generally, and did not just cause MS economic injury. Without any factual allegations to support it, a conclusory statement that Xerox's conduct affected competition is insufficient to adequately plead an antitrust injury. Therefore, MS does not have standing to seek monetary or injunctive relief for Xerox's allegedly false and disparaging statements.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

***5** [15] The final allegation of anticompetitive conduct is Xerox's "offering of loyalty rebates to its resellers, distributors, and wholesalers who agree not to sell MS Inc. replacement solid ink sticks." (TAA ¶ 69(d).) MS claims to have been injured by being excluded from selling to certain retail outlets, thus reducing its potential sales. Further, such loyalty rebates have allegedly "reduce[ed] the supply of lower-price competing products," which are excluded from "much of the market." (*Id.*) Taking these allegations to be true, it is plausible that MS was unable to find an outlet to reach consumers desiring its product. While MS's own loss of business is an insufficient allegation of antitrust injury, it is sufficient if it stems from conduct that prevents potential customers from obtaining a desired product. *Cf. National Assoc. of Pharmaceutical Mfrs., Inc. v. Ayerst Labs.*, 850 F.2d 904, 913 (2d Cir.1988) (lost sales stemming from letter discouraging pharmacists from carrying competitor's product constituted antitrust injury). Whether offering these loyalty rebates is an antitrust violation is a distinct question, and is considered *infra. Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 437 (2d Cir.2005) ("[I]t is useful to distinguish the question of whether an antitrust violation occurred from whether plaintiffs have standing to pursue it."). Therefore, MS has adequately alleged an antitrust injury entitling it to seek monetary damages under Section 4 of the Clayton Act for Xerox's alleged use of loyalty rebates to exclude MS from the market.

[16][17]"A showing of antitrust injury is necessary, but not always sufficient" to establish standing. *Cargill, Inc.*, 479 U.S. at 110 n. 5. "Other reasons" may sometimes indicate that a party who states an antitrust injury is nevertheless not a proper antitrust plaintiff. *Associated Gen. Contractors of California v. California State Council of Carpenters*, 459 U.S. 519, 540-45, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Xerox argues that MS is not a "proper" plaintiff to bring this action because the threat of injury is speculative at best. The Court does not find this to be the case. In this very lawsuit, Xerox is seeking to enforce its patents and exclude MS from the market. This is hardly speculative or indirect. Moreover, the interests of MS in this case appear to be aligned with those of consumers generally. *See C.V.R. Reddy M.B.B.S.*, 2006 U.S. Dist. LEXIS 67848, at *15 (finding interest of plaintiff-competitor did not diverge from consumers where "primary alleged antitrust injury" was a "decrease in the provision of" product). As the only other competitor, MS has unique knowledge about how Xerox's conduct may affect the price and quality of solid ink sticks. Finally, a consumer would be less likely to sue because of the widely dispersed nature of the potential harm. Therefore, the Court finds MS to be a proper party to bring this action.

**II. Relevant Market**

[18][19]"In order to survive a motion to dismiss, a claim under Sections 1 and 2 of the Sherman Act must allege a relevant geographic and product market in which trade was unreasonably restrained or monopolized."*Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F.Supp. 701, 704 (S.D.N.Y.1997) (internal quotation marks and citations omitted). This is so because "[w]ithout a definition of that market there is no way to measure [defendant's] ability to lessen or destroy competition."*Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 177, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965)."Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market."*Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir.2001). There is, however, no absolute rule against dismissal for failure to allege a relevant product market. *See Comm. Data Servers, Inc. v. IBM Corp.*, 166 F.Supp.2d 891, 897-98 (S.D.N.Y.2001) (dismissing antitrust claim for failure to plead relevant market); *Global Discount Travel Servs., LLC.*, 960 F.Supp. at 706 (same); *B.V. Optische Industrie de Oude Delft, Oldelft N.V. v. Hologic, Inc.*, 909 F.Supp. 162, 172 (S.D.N.Y.1995) (same).

***6** [20][21][22][23] Xerox does not dispute that that the relevant geographic market is the United States.[FN5]Thus, the dispute focuses on the relevant product market. "A relevant product market consists of 'products that have reasonable interchangeability for the purposes for which they are produced-price, use and qualities considered.'"*PepsiCo, Inc. v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Coca-Cola Co.,* 315 F.3d 101, 105 (2d Cir.2002) (quoting United States *v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 404, 76 S.Ct. 994, 100 L.Ed. 1264 (1956)).“Products will be considered to be reasonably interchangeable if consumers treat them as acceptable substitutes.”*Id.* (internal quotation marks and citations omitted). To survive a 12(b)(6) motion to dismiss, the alleged product market must bear a “rational relation to the methodology courts prescribe to define a market for antitrust purposes-analysis of the interchangeability of use or the cross-elasticity of demand, and it must be plausible.”*Todd,* 275 F.3d at 200;*see also B .V. Optische,* 909 F.Supp. at 172 (“plaintiff's failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal” (internal quotation marks and citations omitted)). Dismissal on the pleadings may be appropriate where the pleader fails in its attempt to limit a product market to a single brand or where the pleader fails to offer any plausible explanation as to why a market should be limited in a particular way. *Todd,* 275 F.3d at 200.

MS defines the relevant product market as the “sale of replacement solid ink sticks for use in Xerox phase change color printers.”(TAA ¶ 62.) MS then alleges that “replacement color ink sticks are not interchangeable with the consumables for any other brand of color printer, ... [nor are c]onsumables for other types of color printers, such as inkjet cartridges for inkjet printers and toner cartridges for laser jet printers ... reasonably interchangeable with consumables for Xerox phase change color printers. ”(*Id.*) From the view of an owner of a Xerox phase change color printer, the primary customer of replacement solid ink sticks, no other consumables are acceptable substitutes.[FN6] Solid ink sticks are, literally and technically, not interchangeable with other consumables. Thus, MS has defined a product market that is both plausible and bears a rational relationship to the rule of reasonable interchangeability.

[24] Xerox argues that the Court should reject MS's alleged product market because it is based on a single brand-replacement solid ink sticks for Xerox phase change color printers. *See Mathias v. Daily News, L.P.,* 152 F.Supp.2d 465, 482 (S.D.N.Y.2001) (“[C]ourts have consistently held that a brand name product cannot define a relevant market.”). Of course, the replacement solid ink sticks themselves are not single brand products in that both plaintiff and defendant manufacture and market them. However, even assuming that the market for replacement solid ink sticks can properly be characterized as a single-brand product market,[FN7] the Supreme Court squarely rejected Xerox's argument in *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (“*Kodak*”). In *Kodak,* the plaintiff attempted to define distinct product markets for parts and service for Kodak copying and micrographic equipment. Kodak argued that “as a matter of law, a single brand of a product or service can never be a relevant market under the Sherman Act.”*Id.* at 481.Rejecting this argument, the Court found:

*7 The relevant market for antitrust purposes is determined by the choices available to Kodak equipment users. Because service and parts for Kodak equipment are not interchangeable with other manufacturers' service and parts, the relevant market from the Kodak equipment owner's perspective is composed of only those companies that service Kodak machines. This Court's prior cases support the proposition that in some instances one brand of a product can constitute a separate market.

*Id.* at 481-82 (citations omitted). Similarly, plaintiff has reasonably alleged that the relevant market from the perspective of owners of Xerox phase change color printers is composed of only consumables that are compatible with their printers, namely replacement solid ink sticks. *See Sunshine Cellular,* 810 F.Supp. at 494 (denying motion to dismiss based on plaintiff's definition of relevant product market as cellular services available to users of Vanguard cellular phones).[FN8]

### III. Monopolization

[25] The elements of a monopolization claim under Section 2 of the Sherman Act are: “(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."*PepsiCo,* 315 F.3d at 105 (quoting *United States v. Grinnell Corp.,* 384 U.S. 563, 570-71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)).

### A. Monopoly Power

[26][27]"Monopoly power, also referred to as market power is the power to control prices or exclude competition. It may be proven directly by evidence of the control of prices or the exclusion of competition, or it may be inferred from one firm's large percentage share of the relevant market."*Tops Mkts., Inc. v. Quality Mkts., Inc.,* 142 F.3d 90, 97-98 (2d Cir.1998) (internal quotation marks and citations omitted); *see also Kodak,* 504 U.S. at 464 ( "The existence of such power ordinarily is inferred from the seller's possession of a predominant share of the market."). MS alleges that Xerox's share in the market for replacement solid ink sticks exceeds 90% and that it "possesses a monopoly share of the relevant market."(TAA ¶¶ 66, 68.) Such a percentage has been found sufficient to survive summary judgment and is certainly sufficient to survive a motion to dismiss. *See Kodak,* 504 U.S. at 481 ("[E]vidence that Kodak controls nearly 100% of the parts market and 80% to 95% of the service market, with no readily available substitutes, is ... sufficient to survive summary judgment under the more stringent monopoly standard of § 2."); *Grinnell Corp.,* 384 U.S. at 571 (87% of the market is a monopoly); *American Tobacco Co. v. United States,* 328 U.S. 781, 797, 66 S.Ct. 1125, 90 L.Ed. 1575, (1946) (over two-thirds of the market is a monopoly).

Xerox argues instead that even if it has a monopoly share of the market for replacement solid ink sticks, it cannot exert monopoly power because competition exists in the color printer market. More specifically, Xerox contends that it is unable to raise the price of its replacement solid ink sticks because the increased profits from doing so would be offset by a loss in profits from lower color printer sales. Essentially, Xerox asks the Court to consider color printers and their consumables to be a unified market for the purposes of monopoly power.

***8** This exact question was again addressed in *Kodak.*The Court refused to adopt Kodak's proposed "legal rule that equipment competition [in the primary market] precludes any finding of monopoly power in the derivative aftermarkets." 504 U.S. at 466. In examining this question, the Court considered "the cross-elasticity of demand in the equipment and aftermarkets."*Id.* at 470.That is, would raising the price of the aftermarket product above competitive levels always decrease demand for the equipment to such an extent that the producer could not generate a profit. The Court divined "no physical law-no 'basic economic reality '-insisting that competition in the equipment market cannot coexist with market power in the aftermarkets."*Id* . at 471.

Instead, the Court considered the facts in the record to determine whether it was possible to possess monopoly power in the aftermarket for parts and service. *Id.* at 467 ("This Court has preferred to resolve antitrust claims on a case-by-case basis, focusing on the particular facts disclosed by the record."(internal quotation marks and citations omitted)). There was direct evidence that an increase in the price of service had not had any effect on Kodak equipment sales. *Id.* at 472.The Court discussed two reasons why the sale of equipment might not be responsive to the price of parts and service. First, in order for the price of parts and service to affect equipment demand, consumers must be able to accurately inform themselves of the "lifecycle costs" of the equipment, that is, the cost of equipment plus the cost of required service, parts, and consumables over its lifetime. *Id.* at 473.If consumers are unable to do so, or if the cost of obtaining such information is high, then it is less likely that the price of aftermarket products will affect the demand for the primary good. The Court concluded that "it makes little sense to assume, in the absence of any evidentiary support, that equipment-purchasing decisions are based on an accurate assessment of the total cost of equipment, service, and parts over the lifetime of the machine."*Id.* at 475-76.Second, there is a cost to current owners of switching to a different product. If this cost is high, then

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

consumers who have already purchased the equipment are "locked in," and will tolerate some level of price increases in parts before switching to another brand. *Id.* at 476.The extent to which this factor influences monopoly power also turns on the relative number of current owners versus new purchasers and the ability of the monopolist to discriminate in price between different customers.

Drawing directly from the Supreme Court's analysis, MS alleges that "purchasers could not arrive at an accurate 'lifecycle price' because ... the costs are high to acquire information about price, quality, [and] availability of products needed to operate the printer."(TAA ¶ 65.) It further alleges that as a result of "the high cost of switching from one printer to another after the initial purchase, ... consumers are 'locked in' by their purchase ... and will tolerate supra-competitive pricing of replacement solid color ink sticks."(*Id.*) Xerox counters that consumers are not "locked in" because they did not "undergo years of expensive investment in a primary market" and that the allegations of the high costs of obtaining accurate " lifecycle pricing" are conclusory. (Xerox's Combined Reply Mem. 14-15.) Xerox may ultimately be correct that because of the modest cost of color printers and the availability of information as to lifecycle costs, increases in the price of replacement solid ink sticks will reduce sales of Xerox phase change color printers to such an extent that it is economically unable to exert monopoly power. At the motion to dismiss stage, however, MS has adequately alleged that Xerox possesses monopoly power in the relevant market.

### B. Anticompetitive Conduct

***9** [28][29]"The mere possession of monopoly power, and the concomitant charging of monopoly prices, is not only not unlawful; it is an important element of the free-market system."*Verizon Comm'ns Inc. v. Trinko,* 540 U.S. 398, 407, 124 S.Ct. 872, 157 L.Ed.2d 823 (2004). Possession of monopoly power will only be found to be unlawful where it is acquired or maintained through anticompetitive conduct. *Id.* MS alleges (and has standing to assert) that Xerox engaged in anticompetitive conduct by: (1) redesigning its printers and patenting the corresponding replacement solid ink sticks so as to preclude all competition in the market for replacement solid ink sticks; and (2) offering loyalty rebates to keep stores from offering MS's replacement solid ink sticks. The Court addresses each of these allegations in turn.

#### 1. Redesign and Patenting

[30][31] Xerox accuses MS of misconstruing the antitrust laws as prohibiting the introduction of new and redesigned products and the securing of patents on such products. Clearly, the development of superior products is "an essential element of lawful competition, ... [and] any firm, even a monopolist, may generally bring its products to market whenever and however it chooses."*Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 286 (2d Cir.1979). Moreover, "a patent holder is permitted to maintain his patent monopoly through conduct permissible under the patent laws."*SCM Corp. v. Xerox Corp.,* 645 F.2d 1195, 1204 (2d Cir.1981). MS does not dispute the general proposition that this behavior is legal, but rather argues that the anticompetitive motivation for and effect of Xerox's conduct renders it illegal under the antitrust laws.

[32] MS alleges that Xerox's purpose in redesigning all its phase change color printers and patenting the compatible replacement solid ink sticks was wholly predatory, to exclude MS from the market and foreclose all other competition, and not to improve the product. (TAA ¶ 69(a).) Supporting this contention, MS alleges that the only benefit to consumers of the redesigned channels, preventing the insertion of the wrong color ink into the wrong channel, was already served by key plates in former models. (TAA ¶ 69(b).)

In arguing that such conduct can be anticompetitive and the basis of an antitrust claim under § 2 of the Sherman Act, MS relies on the Federal Circuit's decision [FN9] in *C.R. Bard, Inc. v. M3 Systems, Inc.,* 157 F.3d 1340 (Fed.Cir.1998) ("*Bard* "). Bard, the plaintiff in the underlying patent litigation, was the creator of a biopsy gun, a device that would inject a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

disposable biopsy needle into body tissue in order to take a sample for testing. Defendant, M3, was a manufacturer of replacement needles for the biopsy gun. Bard then redesigned the gun in such a way that M3's non-infringing replacement needles were no longer compatible, except with the use of an attachment. At trial, the jury found Bard liable for antitrust violations based on this conduct. On appeal of the jury verdict, the Federal Circuit held:

***10** In order to prevail on its claim of an antitrust violation based on Bard's modification of its Biopty gun to prevent the use of competing replacement needles, M3 was required to provide that Bard made a change in its Biopty gun for predatory reasons, i.e., for the purpose of injuring competitors in the replacement needles market, rather than for improving the operations of the gun.

*Id.* at 1382.The Court found sufficient evidence for the jury to make that finding. The dissent accused the majority of holding "that changing and improving one's proprietary product, ... if to a competitor's potential disadvantage, is actionable under the Sherman Act."*Id.* at 1370.It noted that the trial court did not give the jury an instruction that patent law expressly allowed a patent holder to exclude others without violating antitrust laws.[FN10]

The Court is cognizant of the danger of opening up the courtroom doors to inquiries as to whether modifications that exclude competition truly constitute improvements or are otherwise justified. *See United States v. Microsoft Corp.,* 253 F.3d 34, 65 (D.C.Cir.2001) ("[C]ourts are properly very skeptical about claims that competition has been harmed by a dominant firm's product design changes."); *United States v. Microsoft Corp.,* 147 F.3d 935, 948 (D.C.Cir.1998) ("Antitrust scholars have long recognized the undesirability of having courts oversee product design."). However, Xerox points to no cases establishing a per se rule that modification and patenting of a product can never constitute prohibited anticompetitive conduct even if its purpose is entirely predatory and it reduces consumer options. *Microsoft Corp.,* 253 F.3d at 65 ("Judicial deference to product innovation, however, does not mean that a monopolist's product design decisions are per se lawful.").

To the contrary, several courts have found that product redesign, when it suppresses competition and is without other justification, can be violative of the antitrust laws. *See id.* at 65-67 (modifications to computer system to discourage distribution of rival internet browsers constituted anticompetitive conduct unless otherwise justified); *Abbott Labs. v. Teva Pharms. USA,* Inc., 432 F.Supp.2d 408, 420-424 (D.Del.2006) (allegations that product changes and removal of old products suppressed competition were sufficient to survive motion to dismiss antitrust claim; anticompetitive harm would subsequently be weighed against any benefits presented by defendants); *cf. In re IBM Peripheral EDP Devices Antitrust Litigation,* 481 F.Supp. 965, 1003 (D.Cal.1979) ("It is not difficult to imagine situations where a monopolist could utilize the design of its own product to maintain market control or to gain a competitive advantage.... [I]f those [ ] changes had no purpose and effect other than the preclusion of [competitors], this Court would not hesitate to find that such conduct was predatory [and] ... that use of monopoly power would be condemned.").

***11** MS plausibly alleges that Xerox's conduct was anticompetitive and not otherwise justified-Xerox's new patent will cover the entire market for replacement solid ink sticks, precluding MS and any new entrants, and the patented redesign allegedly serves no benefit to consumers. Of course, if Xerox presents evidence that the modifications improved the product or otherwise served valid business reasons, then the Court or a jury may have to weigh these justifications against the alleged anticompetitive effect. *See HDC Med., Inc. v. Minntech Corp.,* 474 F.3d 543, 550 (8th Cir.2007) (affirming summary judgment where defendant offered a valid business justification for the product modification and plaintiff presented no evidence of anticompetitive intent); *California Computer Products, Inc. v. International Business Machines Corp.,* 613 F.2d 727, 744 (9th Cir.1979) (affirming directed verdict where defendant offered evidence at trial that modification improved product performance and was cost saving). However, this factual inquiry is not appropriate for resolution at this stage of the litigation. Therefore, the Court denies Xerox's motion to dismiss MS's claims based

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

on product redesign and patenting.

### 2. Loyalty Rebates

[33][34] Plaintiff alleges that Xerox offers "loyalty rebates" to its customers that agree not to sell plaintiff's solid ink sticks. (TAA ¶ 69(d).) Neither party has addressed the anticompetitive nature of loyalty rebates in their moving papers. While the conduct is not identical, loyalty rebates may be analogized to exclusive dealing arrangements, where a retailer agrees to purchase all of its requirements for a product from a single manufacturer."Exclusive dealing can have adverse economic consequences by allowing one supplier of goods or services unreasonably to deprive other suppliers of a market for their goods."*Jefferson Parish Hospital Dist. No. 2 v. Hyde,* 466 U.S. 2, 45 (1984). However, exclusive dealing is not uniformly anticompetitive, *see Standard Oil v. United States,* 337 U.S. 293, 306-07, 69 S.Ct. 1051, 93 L.Ed. 1371 (1949), and courts have balanced the impact of such conduct under a rule of reason. *See Continental T.V. v. GTE Sylvania,* 433 U.S. 36, 59, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977); *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 393 (7th Cir.1984) (exclusive dealing agreements are "judged under the Rule of Reason, and [are] condemned only if found to restrain trade unreasonably.").

[35] To state a claim for exclusive dealing, MS " must allege as a threshold matter ... a substantial foreclosure of competition" in the relevant market. *Ford Piano Supply Co. v. Steinway & Sons,* No. 85 Civ. 1284(CSH), 1988 U.S. Dist. LEXIS 523, at *3 (S.D .N.Y. Jan. 13, 1988) (internal quotation marks and citations omitted); *see also Jefferson Parish,* 466 U.S. at 45 ("Exclusive dealing is an unreasonable restraint on trade only when a significant fraction of buyers or sellers are frozen out of a market by the exclusive deal."); *Tampa Elec. Co. v. Nashville Coal Co.,* 365 U.S. 320, 328, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961) (competition foreclosed must "constitute a substantial share of the relevant market"). Where a substantial share of the market is foreclosed, competing manufacturers and new entrants will be unable to find outlets for their products.

***12** [36][37] MS alleges that Xerox offered loyalty rebates to its resellers, distributors, and wholesalers who agreed not to sell MS replacement solid ink sticks with the purpose and effect of reducing supply of lower price competing products in the market. (TAA ¶ 69(d).) These loyalty rebates, MS contends, "exclud[e] from much of the market" competing solid ink sticks sold by MS. (*Id.*)Taking the allegations to be true, the Court finds that MS has adequately alleged that Xerox's loyalty rebates foreclosed a substantial share of the market, preventing MS from reaching the market with its replacement solid ink sticks, thereby employing anticompetitive conduct to achieve or maintain monopoly power.[FN11]

For the foregoing reasons, Xerox's motion to dismiss MS's Fifth Counterclaim **[29, 34]** is DENIED. MS's motion to file a Third Amended Answer is GRANTED. MS may proceed on its § 2 claims based on Xerox's alleged redesign and patenting and its loyalty rebates.

SO ORDERED.

FN1. Xerox also argues, in a cursory footnote at the end of its brief in opposition to the amendment, that granting leave to amend would cause it prejudice because the motion was made nine months after the case was filed. However, the motion to amend, prompted by Xerox's motion to dismiss, was filed prior to the established deadline for amendments of pleadings. The Court finds that MS was diligent in moving to amend its answer, and granting leave would cause no undue prejudice to Xerox.

FN2. Section 4 of the Clayton Act provides: "[A]ny person who shall be injured in his business or property by reason of anything forbidden in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

antitrust laws may sue therefor" for treble damages. 15 U.S.C. § 15(a).Section 16 of the Clayton Act provides: "Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief ... against threatened loss or damage by a violation of the antitrust laws."15 U.S.C. § 26.

FN3. Factors to consider in determining whether a plaintiff is a "proper party" to bring an antitrust action include: (1) the causal connection between the alleged antitrust violation and the harm to the plaintiff; (2) the existence of an improper motive; (3) whether the injury was of a type that Congress sought to redress with the antitrust laws; (4) the directness of the connection between the injury and alleged restraint in the relevant market; (5) the speculative nature of the damages; and (6) the risk of duplicative recoveries or complex apportionment of damages. *Balaklaw v. Lovell,* 14 F.3d 793, 798 (2d Cir.1994).

FN4. In arguing against antitrust standing, Xerox asserts that "exclusion by a valid and enforceable patent" is not "the type of violation the antitrust laws are intended to prevent."(Xerox's Reply and Opp'n 9-10.) This argument is directed to whether Xerox's behavior constitutes prohibited anticompetitive conduct, a question that is considered *infra.*If it can, then the threat of exclusion of one of two competitors from the marketplace as a result of such conduct is clearly an injury of the type the antitrust laws were designed to prevent.

FN5. Xerox notes that MS failed to allege a geographic market in its Second Amended Complaint. However, MS has corrected this deficiency in the proposed Third Amended Answer and now alleges that the relevant geographic market is the United States. (TAA ¶ 66.)

FN6. It is worth noting that MS is defining the relevant market based on reasonable interchangeability and without regard to the patents held by Xerox. Thus, cases cited by Xerox holding that "merely obtaining a patent for a product does not create a product market" are inapposite. *B.V. Optische,* 909 F.Supp. at 172.

FN7. A typical single-brand product market would be one delineated by the single brand name product. *See, e.g., Global Discount Travel Servs., LLC,* 960 F.Supp. at 705-06 (rejecting attempt to define tickets on TWA as the relevant product market); *Mathias,* 152 F.Supp.2d at 481-83 (rejecting attempt to define home delivery subscriptions of the Daily News as the relevant product market); *see also Todd,* 275 F.3d at 200 n. 3 ("These [single-brand] cases would be applicable to this case if plaintiff were alleging that Exxon alone constitutes the relevant product market, but plaintiff does not so allege.").

FN8. Xerox also argues that MS's definition of the relevant market warrants dismissal because Xerox competes with other companies in the color printer market, which is highly competitive. Color printers are clearly not acceptable substitutes for replacement solid ink sticks. Instead, Xerox appears to be arguing that the primary market for color printers and the aftermarket for consumables must be considered together. This argument is addressed *infra* in the context of whether Xerox can exert monopoly power over an aftermarket when it does not have monopoly power over the primary market.

FN9. MS argues that Federal Circuit law is controlling on substantive issues of patent law implicated in the antitrust counterclaim. *See Nobelpharma Ab v. Implant Innovations,* 141 F.3d 1059, 1068 (Fed.Cir.1998) ("[W]hether conduct in procuring or enforcing a patent is sufficient to strip a patentee of its

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

immunity from the antitrust laws is to be decided as a question of Federal Circuit law."). Xerox does not disagree, and notes that the antitrust claims in this case are derivative of the patent claims.

FN10. Moreover, several judges noted in a concurrence to the denial of an en banc hearing that because the appellant did not challenge the jury instructions or argue that modification of a patented product within the scope of the claims can never constitute an antitrust violation, *Bard* did not establish or endorse a new antitrust theory. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 161 F.3d 1380, 1380-81 (Fed.Cir.1998).

FN11. MS also states a counterclaim for attempted monopolization based on the same allegedly anticompetitive conduct. " To recover for attempted monopolization, plaintiff must establish '(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.' "*Heerwagen v. Clear Channel Commc'ns,* 435 F.3d 219, 227 (2d Cir.2006) (quoting *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993)). In addition to alleging anticompetitive conduct as described above, MS alleges that Xerox engaged in such conduct "with the specific intent to monopolize the relevant market" and that there is a "dangerous probability that Xerox will succeed in its attempts to monopolize the relevant market."(TAA ¶ ¶ 74-75.) The Court finds these allegations to be sufficient to state a claim for attempted monopolization.

S.D.N.Y.,2007.
Xerox Corp. v. Media Sciences Intern., Inc.
--- F.Supp.2d ----, 2007 WL 2685063 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.